J. Patrick Ledford, Kingsport, Tenn., for defendant.

**UNITED STATES of America, Plaintiff,**

v.

**Fred Otis CODY, Defendant.**

**No. CR-2-74-23.**

United States District Court, E. D. Tennessee, Northeastern Division.

Nov. 20, 1974.

## MEMORANDUM OPINION AND ORDER

NEESE, District Judge.

Aggrieved by an allegedly unlawful search and seizure from his automobile of a quantity of containers of rubbing alcohol in a cardboard carton, a men's jacket, and a pair of men's trousers, the defendant Mr. Cody moved this Court for the suppression on trial herein of such evidence. Rules 41(f), 12(b)(1), Federal Rules of Criminal Procedure. The Court received evidence essential to a determination of the motion on November 18, 1974. Rule 12(b)(4), Federal Rules of Criminal Procedure.

The defendant Mr. Cody testified that three agents of the bureau of alcohol, tobacco and firearms searched his dwell-

ing on the evening of February 19, 1974; that he had theretofore parked in his driveway about 50 feet from his home his 1964 Mercury Comet automobile; that the officers parked their vehicle immediately behind the defendant's vehicle, blocking it in; that, during the aforementioned search, one of the searching agents inquired if keys on a table in his residence were keys to such vehicle; that he replied in the affirmative; that, after he was placed under arrest and was being guarded in his dwelling by one such agent, the other two agents took such keys, went outside, and searched his automobile; that they opened it and seized from the rear seat thereof the aforementioned articles of personal property; and that, before arriving at his dwelling in such vehicle, he had "tossed" his trousers over the carton containing the bottles of rubbing alcohol, although he is not certain whether the trousers covered completely the carton.

One of the searching agents, Mr. Bobby G. Bilbo, a special agent of the aforenamed bureau, testified that he and other agents had the Cody premises under continuous surveillance from about two o'clock in the afternoon on the day of the search; that no automobile was parked thereon until a short time before their search; that at 5:50 o'clock, p. m., he obtained a warrant to search the defendant's premises from a United States magistrate, located from three to five miles distant; that he was advised by another agent via radio transmission that such vehicle had recently been parked in the driveway of such premises; that he and a fellow-agent entered the Cody dwelling, pursuant to the command of the warrant, at about 9:30 o'clock, p. m., discovered therein an unregistered distillery, and placed the defendant under arrest; that, after the search of the dwelling mentioned, Mr. Cody was left under guard of a fellow agent, while he (Mr. Bilbo) and another agent went to

the said vehicle to search it; that he was unable to see without the aid of a flashlight; that he turned the beam of his light into, first, the front seat and, afterward, the rear seat, of the vehicle; that, in the rear seat, he saw a cardboard box containing plastic bottles, a men's jacket, a pair of men's trousers and other old clothing; that these bottles appeared to be of the same size and shape of some 50–75 16-ounce containers of rubbing alcohol he had earlier seen within the said dwelling; that, when he unlocked and entered the vehicle, he could smell the odor of fuel oil; that the distillery he had discovered in the dwelling was designed to be heated by fuel oil; that rubbing alcohol is utilized in manufacturing whiskey to "proof" the product; that he seized the box of containers of rubbing alcohol, jacket and trousers (upon the latter of which he noticed spots) from the vehicle as evidence of the defendant's crime; and that, in close proximity, the odor of fuel oil on the clothing was stronger.

At the outset of the hearing, the prosecuting attorney, in response to an inquiry from defense counsel, stated that he was relying upon the "plain view" doctrine to justify the warrantless search of the vehicle involved. Defense counsel thereupon announced that he was confining his examination of his client to the issue of the applicability of that doctrine.

The seizure of these articles of the defendant's property was not justified by the "plain view" doctrine. One of the limitations upon the application of this doctrine is that "* * * the discovery of evidence in plain view must be inadvertent. * * *" (Footnote reference omitted.) Coolidge v. New Hampshire (1971), 403 U.S. 443, 469, 91 S.Ct. 2022, 2040, 29 L.Ed.2d 564, 585 [15] (per Mr. Justices Stewart, Douglas, Brennan, and Marshall: *contra*: Mr. Justices Black and Blackmun and Chief Justice Burger), rehearing denied (1971), 404 U.S. 874, 92 S.Ct. 26, 30 L.

**618**

Ed.2d 120. Here, the officers who were searching lawfully the defendant's dwelling inadvertently came upon the keys of a motor vehicle; they were advised that the defendant's vehicle had been parked by him earlier in the driveway of his residential premises; he advised them that the keys fitted that vehicle; they went to such vehicle for the purpose of conducting, with the aid of a flashlight, a general exploratory search thereof; the evidence they discovered came into their view only when the aid of the lighting device was employed; and, the agents utilized the keys they had seized to gain entry into the vehicle and to seize therefrom the incriminating evidence. In a word: the agents were only authorized to make a search limited to the defendant's dwelling. They were not authorized to search the defendant's automobile. When they left the defendant's dwelling and began searching elsewhere, their initially valid limited search was converted into an invalid general exploratory search.

In making the further search without authority and in the absence of emergent circumstances, and in seizing in the process evidence incriminating the defendant, they violated his right to be secure against unreasonable searches and seizures. Constitution, Fourth Amendment. "* * * [T]he 'plain view' doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges. * * *" *Ibid.*, 403 U.S. at 466, 91 S.Ct. at 2039, 29 L.Ed.2d at 583 [11] (per Mr. Justices Stewart, Douglas, Brennan and Marshall).

The defendant's motion of November 12, 1974 hereby is granted, and all evidence and testimony in relation to the jacket, trousers and rubbing alcohol seized from the defendant on February 19, 1974 hereby are

Suppressed.